A/S MERILAID & COMPANY, Plaintiff, *v.* CHASE NATIONAL BANK OF THE CITY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, May 16, 1947.

*Perry A. Beck* for plaintiff.

*Milbank, Tweed, Hope, Hadley & McCloy* for defendant.

Koch, J. The defendant bank holds a balance of $52,505.73 in a deposit account standing in the name of A/S Merilaid & Co., a corporation organized under the laws of the Republic of Estonia. The account was opened in 1940, just prior to the incorporation of Estonia into the Union of Soviet Socialist Republics.

In 1945, at a meeting of shareholders representing a majority of the stock of the corporation held in Stockholm, Sweden, the seat of the corporation was transferred from Tollin, Estonia, to Stockholm. The former directors were re-elected and they were to continue the business of the corporation, and authority was given to withdraw funds from the deposit account with the defendant for that purpose.

On June 10, 1946, a check in the amount of $45,000 drawn by the corporation with proper signatures thereon was presented for payment. The defendant refused payment. Thereafter the corporation commenced this action.

The answer interposes two defenses: (1) That the bank account is blocked under Executive Order No. 8389 (Code of Fed. Reg., Cum. Supp., tit. 3, p. 645); (2) that the plaintiff corporation although existing at the time of the opening of the account became nationalized after the absorption of the Republic of Estonia into the Union of Soviet Socialist Republics; that its assets became vested in the Estonian State Passenger and Cargo Steamship Line and that the defendant received cabled instructions to transfer the balance of plaintiff's account to Soviet banks.

The answer puts in issue the corporate existence of the plaintiff and thereby denies its title to the moneys in the deposit account. The corporate existence of the plaintiff for the purposes of this suit depends upon the effect to be given the nationalization decree of the Estonian Soviet Socialist Republic in this State.

The property involved in this action is located in New York where the contract relation was originated. Laws of foreign governments have extraterritorial jurisdiction only as a matter of comity. The public policy of the State determines when the foreign legislation will apply, and a decree which is contrary to that policy will not be given effect (*Petrogradsky M. K. Bank* v. *National City Bank,* 253 N. Y. 23; *Vladikavkazsky Ry. Co.* v. *New York Trust Co.,* 263 N. Y. 369).

The nationalization decree of the present regime in Estonia

goes beyond the ordinary legislation regulating everyday transactions of business. It is confiscatory in effect and contrary to the public policy of this State. In addition to this, the Government of the United States does not recognize the incorporation of the Republic of Estonia into the Union of Soviet Socialist Republics, and it has refused to recognize the Estonian Soviet Socialist Republic. The legality of the nationalization laws and decrees or of any of the acts of the regime now functioning in Estonia is not recognized by the government of the United States. In *United States* v. *Belmont* (301 U. S. 324) and *United States* v. *Pink* (315 U. S. 203), where confiscation decrees were upheld, their validity rested upon agreements and assignments arising at the time of adjustment of our foreign relations with Russia. There the Government of the United States, as representative of all the States, exercised its power to settle our international relations. The States were bound by the agreements resulting therefrom (*Bollack* v. *Societe Generale, etc., en France,* 263 App. Div. 601).

The Estonian Soviet Socialist Republic by its decree placed the plaintiff corporation in jeopardy. The directors and shareholders were forced to change the seat of the corporation in order to continue its business and conserve its assets. Irregularities in procedure in so doing are not enough to render their efforts void. All that could be done to conform with the usual formalities was done. A majority of the shareholders approved the transfer to Sweden. They acted on behalf of the corporation. The good faith of the directors elected by them is not questioned. There is every indication that the directors will continue to act in the best interests of the corporation. The corporation was continued in business and its property protected in the only manner feasible at the time.

These conditions constitute the basis on which this court holds that the directors and shareholders were empowered to act as they did (*James & Co.* v. *Rossia Insurance Co.,* 247 N. Y. 262; *Petrogradsky M. K. Bank* v. *National City Bank,* 253 N. Y. 23, *supra*).

Executive Order No. 8389, requiring a license from the Secretary of the Treasury for the transfer of moneys of the deposit account, does not affect plaintiff's title, which is the real issue in this case. Provision may be made in the judgment that no payment be made to the plaintiff by the defendant except on full compliance with whatever legal regulations are in force at such time (*Bollack* v. *Societe Generale, etc., en France,* 263 App. Div. 601, *supra*).

Judgment for plaintiff. Settle judgment including therein provisions as indicated above.