Allen Murray Myers, J.
Plaintiff, a Canadian company, sues on a Canadian default judgment entered against defendant, a New York company, based upon the latter’s failure to appear and answer a writ of summons issued by an Ontario court and served upon the defendant in New York.
Defendant has interposed the affirmative defense that the Ontario court lacked jurisdiction over the defendant so that the enforcement and the judgment here would violate the rules of comity between nations as well as the due process clause of the Fourteenth Amendment to the United States Constitution; and has entered a counterclaim against plaintiff in the amount of $12,000.
Plaintiff has now moved (a) for summary judgment and (b) to dismiss the counterclaim.
The essential facts which gave rise to this action are that defendant mailed an order for nails from its place of business in New York to plaintiff in Ontario, Canada; plaintiff filled this order by shipping the nails and mailing an invoice therefor from Ontario to New York; defendant then refused to pay for the nails claiming that they were not the gauge ordered and were mislabeled and as a result defendant lost a customer.
Plaintiff then instituted an action in Ontario to recover a balance due for the nails sold and delivered and served defendant with a “Writ of Summons ” in New York pursuant to the *334 provisions of an Ontario “ long-arm ” statute, to wit, rule 25(F) of the Ontario Annual Practice Rules of Procedure.
Unlike the pertinent New York “long-arm” statute (CPLR 302, suhd. [a], par. 1), which confers personal jurisdiction over a nondomiciliary (by service outside of the State) “who in person or through an agent (1) transacts any business within the state ” as to a cause of action arising therefrom, the pertinent section of the Ontario statute confers personal jurisdiction (by service outside of Ontario) “ where the action is in respect of a breach committed within Ontario of a contract wherever made ”. (Emphasis supplied.) However permission to serve the “ Writ of Summons ” outside of Ontario must be authorized by an order of the court.
In this case such an order was procured solely upon the bare allegation of the attorney for plaintiff, in an affidavit submitted in support of the application, that a breach occurred in Canada.
Although a foreign judgment when sued upon in the courts of this State is normally conclusive so as to preclude a retrial upon the merits, ‘ ‘ where the judgment is tainted with fraud, or with an offense against public policy or the foreign court had no jurisdiction over the person of the defendant or of the subject matter of the action ”, it will not be given any effect by our courts. (Johnston v. Compagnie Generate Transatlantique, 242 N. Y. 381; Cowans v. Ticonderoga Pulp & Paper Co., 219 App. Div. 120, affd. 246 N. Y. 603; Vladikavkazsky Ry. Co. v. New York Trust Co., 263 N. Y. 369.)
In order to determine whether the Ontario default judgment precludes a relitigation of the merits in New York, we must find the answer to the following questions:
(1) Does the default judgment against defendant based upon jurisdiction conferred pursuant to the Ontario “long-arm” statute contravene our public policy or the due process clause of the Fourteenth Amendment to the United States Constitution!
(2) If it does not contravene our public policy or the Fourteenth Amendment, did the defendant in fact commit a breach of contract in Ontario which would authorize personal service of the writ of summons upon him in New York pursuant to the Ontario statute so as to give jurisdiction to the Ontario court!
Defendant’s attorney argues that to be recognized by our courts, as a matter of comity, the judgment must not only be rendered “ by a court having jurisdiction of the cause, and upon regular proceedings and due notice ” (Hilton v. Guyot, 159 U. S. 113, 166-167) and not contravene our public policy but must also be rendered by a foreign court where ‘ ‘ reciprocal treatment *335 is accorded similar New York judgments ”, citing in support thereof Hilton v. Guyot (pp. 170-171, supra); and, indeed, there is language in Hilton v. Guyot to that effect.
However, our Court of Appeals has rejected “reciprocity” as a requisite in Cowans v. Ticonderoga Pulp & Paper Co. (supra) and in Johnston v. Compagnie Generate Transatlantigue (supra).
In Johnston (242 N. Y. 381, 386-387) the court said: “ To what extent is this court bound by Hilton v. Guyot? * # * the question is one * * * of private right rather than public relations and our courts will recognize private rights acquired under foreign laws and the sufficiency of the evidence establishing such rights. A right acquired under a foreign judgment may be established in this State without reference to the rules of evidence laid down by the courts of the United States. * * *
‘ [Comity] is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question.’ (Brown, J,, in Mast, Foss & Co. v. Stover Mfg. Co., 177 U. S. 485, 488.) It, therefore, rests, not on the basis of reciprocity, but rather upon the persuasiveness of the foreign judgment. (Loucks v. Standard Oil Co., 224 N. Y. 99, 111.) ”
Since the judgment under consideration is a default judgment based upon personal service of the writ of summons outside of the jurisdiction of the rendering court it is ipso facto not as persuasive as it might have been were it rendered after a trial on the merits.
But the fact that the judgment was entered by default is not determinative of the issue of persuasiveness. This is merely a factor to be considered as part of the broader issue of whether defendant’s contacts with Ontario were sufficient to satisfy our requirements of due process and our sense of justice and equity.
In most instances, a court would not be able to determine on a motion for summary judgment whether the foreign judgment sued upon offended “ traditional notions of fair play and substantial justice ” (Longines-Wittnauer v. Barnes & Reinecke, 15 N Y 2d 443, 451, quoting from International Shoe Co. v. Washington, 326 U. S. 310, 316), or “ our own sense of justice and equity as embodied in our public policy ” (Vladikavkazsky, supra, p. 378), or whether it served to deprive the defendant of due process of law in violation of the Fourteenth Amendment.
This issue normally should be determined by a trial court. As was stated in Martens v. Martens (284 N. Y. 363, 365-366):
*336 “ Judgments of courts of foreign countries are received in evidence in our courts when duly authenticated hut they differ from judgments of courts of our sister States to which, by constitutional mandate, full faith and credit must be given. They must not contravene our public policy. In order to pass upon the question as to whether a judgment of a court of a foreign country is to be recognized, there must be a disclosure of the jurisdiction of the foreign court of the subject-matter and of the parties. The acts of the parties to the foreign litigation in invoking the jurisdiction must also sometimes be scrutinized. This can best be done at a trial where the court has all the facts before it and can determine under established rules the question of recognition or non-recognition of the judgment of the foreign court ”. (Emphasis supplied.)
Similarly, in Hanson v. Denckla (357 U. S. 235, 253) the court held: “ The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. * * * It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.”
However, in the instant case there can be no dispute as to the factual nature of the act relied upon by plaintiff as sufficient to invoke the jurisdiction of the foreign court. The defendant had absolutely no contact with Canada. Its only affirmative act was the mailing of a letter in New York. None of its agents ever set foot in Canada nor did it transact any business within that nation. In such a case neither justice nor equity would support the grant of conclusive effect to a default judgment, concepts of fair play and substantial justice would be violated by such a grant, and, additionally, that minimum contact necessary to satisfy the requirements of due process is lacking.
In view of the foregoing, it is unnecessary to pass upon the issue of whether the applicable Ontario law would hold that the defendant committed a breach of contract in Ontario sufficient to invoke its “ long-arm statute ”. No Ontario law on this issue has been furnished to this court. It may be observed, however, that it is most unlikely that the mere failure of a New York company to render payment on goods which it ordered by mail from Ontario would amount to a breach of contract within that jurisdiction.
Since conclusive effect is hereby denied to the Canadian judgment, that judgment can have no effect upon the defendant’s counterclaim.
*337 For the above reasons, this motion for summary judgment is denied. Plaintiff may move to amend its pleadings to include a cause of action for goods sold and delivered, if it so desires, by making an appropriate application at Special Term, Part I.